<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DEMIAN BOROFF,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**DETECTIVE LYNN, et al.,**<br><br>　　　　　　**Defendants.** | **Civil Action No. 11-6849 (ES) (JAD)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

**I.     Introduction**

　　　This action arises from injuries sustained by Plaintiff Demian Boroff while being escorted out of MetLife stadium by New Jersey State Police (NJSP) Troopers George Brewer ("Trooper Brewer"), Nickolas Lynn, Jeremy Chmiel, and Thomas Preston (collectively "Defendants"). Pending before the Court is Defendants' motion for summary judgment. (D.E. No. 52). The Court has considered the submissions accompanying the instant motion and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, Defendants' motion is GRANTED.

## II.     Background

### A.     Undisputed Factual Background[1]

On November 21, 2010, Plaintiff attended a football game at MetLife Stadium between the New York Jets and Houston Texans. (D.E. No. 52-1, Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment ("Def. SMF") ¶ 1; Pl. SMF ¶ 1). The game was scheduled to begin at 1:00 p.m. and Plaintiff arrived at the stadium at about 11:00 a.m. to "tailgate with friends." (Def. SMF ¶¶ 2, 3; Pl. SMF ¶¶ 2, 3). Prior to entering the stadium somewhere between 12:30 and 12:45 p.m., Plaintiff consumed three to four vodka-cranberry cocktails, containing one-half vodka, one-half cranberry, and a dash of seltzer. (Def. SMF ¶¶ 4, 5, 7; Pl. SMF ¶¶ 4, 5, 7). Once inside the stadium, Plaintiff purchased a beer from a concession stand. (Def. SMF ¶ 8; Pl. SMF ¶ 8).

Once Plaintiff reached his seat, he began "trying to get the crowd going" and "was raising [his] hands" and screaming, "Let's Go Jets." (Def. SMF ¶ 9; Pl. SMF ¶ 9). Plaintiff was standing at this time and asking the crowd behind him to also stand up. (Def. SMF ¶ 10). After three or four minutes, MetLife Stadium personnel approached Plaintiff and requested that he quiet down and take his seat. (Def. SMF ¶ 11; Pl. SMF ¶ 11). Plaintiff responded that he was "not going to quiet down and take my seat" and that "this is a football game" and "we're going to be loud, we're going to be excited." (Def. SMF ¶ 12; Pl. SMF ¶ 12). Plaintiff's response and conduct, including

---

[1] These background facts are taken from the parties' statements of undisputed material facts. For numbered paragraphs 6–8, 10, 14, 20, 23, 25, 28–31, 34–35, 41–42, 44, 46, 51, 54–84, 86–90, 94, 101–12, Plaintiff failed to comply with Local Civil Rule 56.1(a), which requires a citation to "the affidavits and other documents submitted in connection with the motion" when the non-movant does not agree with the movant's statement. (*See* D.E. No. 53, Response to Statement of Material Facts and Counterstatement of Material Facts ("Pl. SMF")). Although the Court will strive to highlight any dispute, it will deem any statement of fact which was not denied by Plaintiff with a citation to the record as undisputed for purposes of this motion. *See McCann v. Unum Provident*, 921 F. Supp. 2d 353, 359 (D.N.J. 2013) ("[F]ailure to reference evidence of record demonstrates that there is no reason to disbelieve the statements of fact contained in the Paragraphs at Issue. The Court will thus deem the facts recited in the Paragraphs at Issue to be undisputed . . . .") (internal citation omitted); *Maultsby v. Rih Acquisitions NJ, LLC*, 2011 U.S. Dist. LEXIS 148267, at *1 n.1 (D.N.J. Dec. 27, 2011) ("For those statements of facts for which plaintiff did not properly deny with a citation to the record, and for which the Court finds supported in the record, the Court deems them admitted.").

the use of profanity, was observed by Steven Babiak, the Assistant Director of Security for the New Jersey Sports & Exposition Authority.  (Def. SMF ¶ 13; Pl. SMF ¶ 13).  Babiak observed Plaintiff "yelling at other guests."  (Def. SMF ¶ 14).  According to Babiak, Plaintiff was "trying to get the crowd riled up" but the crowd was refusing, causing Plaintiff to become "angry" with the crowd and yell at them for their lack of support for the team.  (Def. SMF ¶ 15; Pl. SMF ¶ 15).

Babiak approached Plaintiff and asked him to come to the concourse area, outside the view of the other fans.  (Def. SMF ¶ 16; Pl. SMF ¶ 16).  Plaintiff initially refused, but ultimately accompanied Babiak to the concourse level, where they were joined by Plaintiff's wife, Amy, and uniformed New Jersey State Police Troopers.  (Def. SMF ¶¶ 17, 19, 22, 23; Pl. SMF ¶¶ 17, 19, 22).  Babiak advised Plaintiff that he could return to his seat if he would stop his conduct.  (Def. SMF ¶ 24; Pl. SMF ¶ 24).  Plaintiff said he would continue his conduct and also continued to use profanity.  (Def. SMF ¶ 25).  A decision was made to escort Plaintiff to the processing office.  (Def. SMF ¶ 26; Pl. SMF ¶ 26).

The area where the processing office is located, known as the loading dock area, is a highly secure area and members of the general public are not permitted to be in this area unless they are under escort by either stadium personnel or the New Jersey State Police.  (Def. SMF ¶¶ 27, 28).  The area includes a Transportation Security Administration (TSA) screening area for the players and coaches, and a New Jersey State Police office; team locker rooms and a tunnel that opens directly into the corner of the north end zone of the playing field are located nearby.  (Def. SMF ¶¶ 29–31).

Plaintiff was accompanied to the processing office by his wife, Amy, and they took a seat on a long bench located across the hallway from the NJSP office.  (Def. SMF ¶¶ 32–34; Pl. SMF ¶¶ 32–34).  Babiak approached Plaintiff as he was seated on the bench and explained to Plaintiff

the process for ejectment, and obtained basic personal information from Plaintiff. (Def. SMF ¶¶ 35–37; Pl. SMF ¶¶ 35–37). Plaintiff refused to be taken inside the processing room without his wife. (Def. SMF ¶ 40; Pl. SMF ¶ 40). While expressing his refusal, Plaintiff became animated and raised his arms several times. (Def. SMF ¶ 41). Babiak ultimately decided to allow Plaintiff's wife into the processing room. (Def. SMF ¶ 43; Pl. SMF ¶ 43).

Inside the processing room, Plaintiff became a "little aggressive." (Def. SMF ¶ 44). Plaintiff attempted to leave the room and "got physical" with Babiak. (Def. SMF ¶¶ 45, 46; Pl. SMF ¶¶ 45, 46). Plaintiff's actions were observed by Troopers Nickolas Lynn and Jeremy Chmiel, who subsequently took Plaintiff into custody. (Def. SMF ¶¶ 47, 48; Pl. SMF ¶¶ 47, 48).

After being escorted from the processing room to the NJSP office, Plaintiff was processed and charged with Disorderly Conduct, N.J.S.A. 2C:33-2, and issued a complaint summons. (Def. SMF ¶¶ 49, 50; Pl. SMF ¶¶ 49, 50). After processing, Troopers Brewer and Preston were tasked with escorting Plaintiff out of the stadium, which entails escorting the individual through the secure area and past the outside fence which surrounds the stadium. (Def. SMF ¶¶ 52, 53; Pl. SMF ¶¶ 52, 53).

At the time of the escort, Plaintiff was in a highly impaired state due to his consumption of alcohol. (Def. SMF ¶¶ 54–63). Emerging from the NJSP office, Plaintiff moved away from Trooper Brewer, Trooper Preston, and Plaintiff's wife and moved towards the wall adjacent to the NJSP office. (Def. SMF ¶¶ 65, 66; Pl. SMF ¶¶ 65, 66). Troopers Brewer and Preston led Plaintiff back towards the escort route, at which point Plaintiff stopped, turned and faced the troopers and then attempted to move past them and walk in the opposite direction from the escort path; Troopers Brewer and Preston again grabbed Plaintiff and pulled him back towards the escort path, but Plaintiff continued to move away from the escort path. (Def. SMF ¶¶ 67, 68, 70–72; Pl. SMF ¶¶

4

67, 68, 70–72). Upon noticing Plaintiff's conduct and Troopers Brewer and Preston's attempts to escort him out of the stadium, Trooper Chmiel, along with an unidentified NJSP trooper in a Class A uniform, joined the escort. (Def. SMF ¶ 74). Troopers Brewer and Preston then led Plaintiff towards the exit, with Trooper Brewer holding Plaintiff's right arm and Trooper Preston flanking Plaintiff to the left. (Def. SMF ¶ 75; Pl. SMF ¶ 75).

Plaintiff then intentionally kicked his feet out and went to the ground, within ten feet of the TSA screening area. (Def. SMF ¶¶ 76, 77). Troopers Brewer and Preston, along with an unidentified trooper, physically lifted Plaintiff to his feet. (Def. SMF ¶ 78; Pl. SMF ¶ 78). Almost immediately after being brought to his feet, Plaintiff kicked his feet out again and went back to the ground. (Def. SMF ¶ 79; Pl. SMF ¶ 79). Again, the troopers assisted Plaintiff to his feet. (Def. SMF ¶ 80; Pl. SMF ¶ 80). As they approached the exit, Plaintiff turned his head back and looked over his shoulder and then suddenly spun out of the troopers' grasp and turned away from the exit. (Def. SMF ¶¶ 81, 82; Pl. SMF ¶¶ 81, 82). TSA Screener Sabrina McCoy observed Plaintiff break free of Trooper Brewer's grasp and it appeared to her that Plaintiff was going to hit one of the troopers. (Def. SMF ¶¶ 89, 90; Pl. SMF ¶¶ 89, 90). Trooper Brewer reached out to regain control of Plaintiff. (Def. SMF ¶ 91; Pl. SMF ¶ 91). Plaintiff claims that, after he turned away from the troopers, he was tackled to the ground by Trooper Brewer; by contrast, Trooper Brewer testified that he and/or Plaintiff lost their footing and fell to the floor. (Def. SMF ¶¶ 92, 93; Pl. SMF ¶¶ 92, 93).[2] As result, Plaintiff's left ankle got caught under him and fractured. (Def. SMF ¶ 94). The troopers then carried Plaintiff back to the NJSP office and called emergency services. (Def. SMF ¶ 95; Pl. SMF ¶ 95). Plaintiff was transported to Hackensack University Medical Center for treatment of his ankle. (Def. SMF ¶ 100; Pl. SMF ¶ 100).

---

[2] Plaintiff concedes that only one trooper was involved in, as he describes it, tackling him to the ground and that Troopers Preston, Lynn, and Chmiel did not take him to the ground. (Def. SMF ¶¶ 96–99; Pl. SMF ¶¶ 96–99).

### B.       Procedural History and Remaining Claims

Plaintiff instituted this action on November 22, 2011. (D.E. No. 1). The Complaint alleged seven counts against seven defendants: Troopers Lynn, Chmiel, Brewer and Preston, the NJSP, New Meadowlands Stadium Company LLC ("New Meadowlands Stadium"), and the New Jersey Sports & Exposition Authority (NJSEA). (*Id.*). With respect to the troopers, the Complaint alleged claims for excessive force under the Fourth and Eighth Amendments, negligence, intentional infliction of emotional distress (IIED), and assault and battery. (*Id.* at Counts I–II, IV–VI). The Complaint alleged direct negligence claims against NJSP, New Meadowlands Stadium and NJSEA. (*Id.* at Counts III, VII). Plaintiff's Eighth Amendment claims against the troopers, and all of his claims against NJSP, New Meadowlands Stadium, and NJSEA, were dismissed via separate stipulations. (D.E. Nos. 16, 30, 32).

On April 15, 2014, Defendants filed the instant motion for summary judgment, which is now ripe for adjudication. (D.E. No. 52). In his opposition, Plaintiff additionally concedes that Defendant Brewer is the "only responsible party for tackling plaintiff to the ground" and consents to the dismissal of the remaining individual defendants except for Defendant Brewer. (D.E. No. 53-7, Plaintiff's Brief in Opposition of Motion for Summary Judgment ("Pl. Opp. Br.") at 1–2). Furthermore, Plaintiff concedes that he cannot make a *prima facie* case for IIED and consents to dismissal of this claim. (*Id.* at 2). Accordingly, the Court dismisses the remaining individual defendants other than Trooper Brewer, as well as Plaintiff's claim for IIED.

Thus, the claims remaining before the Court are against only Trooper Brewer for excessive force, negligence, and assault and battery. The Court finds that Trooper Brewer has met his burden and is entitled to summary judgment by showing an absence of evidence supporting Plaintiff's allegations of excessive force.

**III.     Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and if, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to a judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when a reasonable finder of fact could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012).

The moving party must first show that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. If the movant meets this burden, the burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In presenting that evidence, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). However, where, as here, there is video footage related to the claims, the Court will not draw inferences that are inconsistent with the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Ultimately, the non-movant must show that there is "evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252. Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *Celotex,* 477 U.S. at 324. Further, the non-

7

moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003).

**IV.     Discussion**

Trooper Brewer seeks summary judgment on Plaintiff's remaining claims.  In support of his motion, Trooper Brewer argues first and foremost that even if he took Plaintiff to the ground intentionally, it was not an unreasonable use of force under the circumstances.  (D.E. No. 52-2, Brief in Support of Defendants' Motion for Summary Judgment ("Def. Br.") at 8–16).  Plaintiff argues in opposition that the use of force was unreasonable because "there was no reason for [Trooper Brewer] to have touched" him—he was "a free a person" no longer "under arrest" nor trying to "escape" who was "concerned with the whereabouts of his wife."  (Pl. Opp. Br. at 4–5).  Alternatively, Defendant Brewer argues that he is nevertheless entitled to qualified immunity on Plaintiff's excessive force claim, (Def. Br. at 17–21), and summary judgment on Plaintiff's state law claims, (*id.* at 22–23, 25).  Plaintiff does not directly address these alternate theories.

For the reasons that follow, the Court GRANTS summary judgment in Trooper Brewer's favor on all remaining counts in the Complaint because it finds Trooper Brewer's actions objectively reasonable under the circumstances.

    **A.     Reasonable Use of Force**

The initial issue this Court must consider in resolving the instant motion is whether, construing the evidence in the light most favorable to Plaintiff, there is sufficient evidence from which a trier of fact could reasonably conclude that Trooper Brewer's use of force was objectively unreasonable under the circumstances.  *See Samoles v. Lacey Twp.,* No. 12-3066, 2014 WL 2602251, at *6 (D.N.J. June 11, 2014) (citing *Thomas v. City of Erie,* 236 F. App'x 772, 776 (3d Cir. 2007)).

When addressing an excessive force claim, the Court must consider whether the officers' use of force was objectively reasonable under the circumstances, regardless of their underlying motive or intentions. *Graham v. Connor,* 490 U.S. 386, 397 (1989). According to *Graham*, the reasonableness of a particular use of force standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Moreover, the Third Circuit has identified the following factors to consider when determining the reasonableness of an officer's use of force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; (3) whether the suspect is actively resisting being seized or attempting to evade seizure by flight; (4) the possibility that the suspect is violent or dangerous; (5) the duration of the police action; (6) whether the police action takes place in the context of effecting an arrest; (7) the possibility that the suspect may be armed; and (8) the number of persons the officer must contend with at one time. *Kopec v. Tate,* 361 F.3d 772, 776–77 (3d Cir. 2004). Furthermore, "the central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 F. App'x. 179, 182 (3d Cir. 2011).

When weighing these factors, this Court should look at the totality of the circumstances and evaluate the officers' conduct from the officers' vantage point at the time of the incident. *Kopec,* 361 F.3d at 776; *Samoles,* 2014 WL 2602251, at *6. As a result, the reasonableness of a particular use of force

> must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact

9

> that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Samoles,* 2014 WL 2602251, at *6 (citing *Graham,* 490 U.S. at 396–97) (internal quotation marks and citations omitted).

Plaintiff's excessive force claim is limited to the process for ejectment from the stadium and his subsequent arrest by the NJSP. (Pl. Opp. Br. at 2). Plaintiff contends that after being processed for three and one-half hours for a disorderly person's offense, he was "no longer arrested" and "there was no reason for [Trooper Brewer] to have touched plaintiff." (*Id.* at 4–5). In sum, Plaintiff argues the tackle to the ground was unreasonable because: (1) he was a free person; (2) he was looking for his wife and did not receive a response from Defendants regarding her whereabouts; (3) he was not trying to escape; and (4) Trooper Brewer got "fed up" and "had enough" with Plaintiff's attempts to delay ejectment. (*Id.* at 5).

Trooper Brewer argues that even if he took Plaintiff to the ground intentionally, this is not unreasonable use of force. (Def. Br. at 8). Defendants contend that the Fourth Amendment permits the use of force and takedown maneuvers "reasonably necessary to overcome" a threat to the safety of the officer or those in the vicinity posed by a resisting suspect. (*Id.* at 10). In this instance, Defendants argue Plaintiff posed a threat to the security and safety of others because Plaintiff was

> supremely intoxicated, with a blood-alcohol content of .208%; he was in a highly restricted, sterile area, which was less than 50 yards from the football field during a live game; he was non-cooperative, and at one point became physical, with the stadium security staff; he was combative from the moment he exited the New Jersey State Police (NJSP) office, attempting to push past Troopers Brewer and Preston and walk in the direction of the player locker rooms; he twice intentionally fell to the ground to disrupt the escort; and then, just as he saw the sunlight through the doorway, he suddenly broke free of the troopers and turned away from the exit.

10

(D.E. No. 55, Letter Reply Brief in Further Support of the Defense's Motion for Summary Judgment ("Def. Reply Br.") at 6).

This Court finds Trooper Brewer's alleged takedown maneuver objectively reasonable under the circumstances. Especially instructive to the Court is *Mierzwa v. U.S.*, 282 F. App'x 973 (3d Cir. 2008). In that case, Edward Mierzwa called the police to complain that his driveway was being blocked by illegally parked cars. *Id.* at 974. When the police officers arrived, Mierzwa approached them and began shouting obscenities. *Id.* The police officers instructed Mierzwa to "step to the curb, lower his voice and calm down." *Id.* When he refused to comply, the officers informed Mierzwa that he was under arrest for tumultuous behavior. *Id.* at 975. Mierzwa refused to be arrested, failing his arms in an attempt to break free and enter his home. *Id.* The officers tackled Mierzwa to the ground and applied arm locks, and ultimately used pepper spray to subdue him. *Id.* Mierzwa suffered a sprained knee as a result of the encounter and sued the officers, alleging excessive force under the Fourth Amendment. *Id.* The District Court granted summary judgment to the police officers and the Third Circuit affirmed. *Id.* at 978.

The Third Circuit noted that Mierzwa "was arrested in connection with a minor offense (tumultuous behavior)." *Id.* at 978. However, the Third Circuit emphasized Mierzwa's animosity, failure to comply with the officers' instructions, and attempt to leave the scene, which made it "reasonable for the officers to physically restrain him and to administer the pepper spray in order to effectuate the arrest." *Id.* at 979. Accordingly, the Third Circuit held that no Fourth Amendment violation had occurred as a matter of law. *Id.* In addition to *Mierzwa*, Trooper Brewer cites to three other cases from within the Third Circuit which reached a conclusion similar to *Mierzwa*. (Def. Br. at 12).

11

Plaintiff offers no distinction of *Mierzwa* or the additional, similar cases cited by Trooper Brewer. Instead, Plaintiff relies on *Groman v. Township of Manalapan*, 47 F.3d 628 (3d Cir. 1995). However, *Groman* is clearly distinguishable. In *Groman*, there was a dispute about what prompted the use of force. *See id.* at 632. Gorman contended the officer struck him in the mouth while he was in the middle of a stroke and "was standing still, arms to his side" inside his own home. *Id.* In contrast, the officer claimed she put her hand on Groman's shoulder to get him to sit down, and that Groman responded by punching her in the face. *Id.* When Groman reared back for a second punch, according to the officer, she punched him. *Id.* The Third Circuit found this to be a sufficient factual dispute that precluded summary judgment. *Id.* at 634. Here, unlike *Groman* the material facts are not in dispute. The Court is significantly aided by video surveillance footage, which clearly shows Plaintiff spinning away from Trooper Brewer immediately before the alleged takedown maneuver in an effort to "stall the officers from ejecting him." (Pl. Opp. Br. at 5). And the evidence before the Court further shows that Plaintiff was highly intoxicated, uncooperative, and combative, in a highly restricted area. (*See* Part II.A, *supra*).

Furthermore, the Court disagrees with Plaintiff's remaining arguments that he was a (1) "free person" at the time of the alleged takedown, (2) that he was entitled to look for his wife before being ejected, and (3) that Trooper Brewer's intent[3] carries weight in the Court's analysis. First, Plaintiff was undoubtedly "seized" for Fourth Amendment purposes and not a "free person" at the time of the takedown. *See Brendlin v. California*, 551 U.S. 249, 254 (2007) ("[A] person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied . . . .") (internal quotations and citations omitted). At no point in time was Plaintiff free to move around

---

[3] Plaintiff contends that Trooper Brewer tackled him to the ground because Trooper Brewer was "fed up" and had "had enough" with Plaintiff. (*See* Pl. Opp. Br. at 5).

in this restricted space where the alleged takedown occurred. Plaintiff had no right to stay in the stadium, let alone the restricted space, and the evidence shows that Plaintiff refused to leave on multiple occasions. (*See* Def. SMF ¶¶ 65–82). Second, Plaintiff claims that he spun out of Trooper Brewer's grasp because he had a "right to make certain that his wife was with him." (Pl. Opp. Br. at 5). The Court is not aware of any such right under the circumstances and Plaintiff cites no law in support of this claim. Third, the law is clear that Trooper Brewer's intent is irrelevant. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

Looking at the totality of the circumstances and evaluating the officers' conduct from the officers' vantage point at the time of the incident, *Kopec,* 361 F.3d at 776, the Court finds that there is not sufficient evidence from which a trier of fact could reasonably conclude that Trooper Brewer's use of force was objectively unreasonable under the circumstances, even when construing the evidence in the light most favorable to Plaintiff. *See Samoles,* 2014 WL 2602251, at *6. The Third Circuit in *Mierzwa* held that no Fourth Amendment violation occurred where there was a relatively minor crime and "a sober suspect attempted to retreat from his front yard into his home." (Def. Br. at 15). In accordance with *Mierzwa*, this Court is convinced that Trooper Brewer's actions were objectively reasonable when confronted with a potentially volatile, highly intoxicated Plaintiff who attempted on several occasions to evade his ejectment from a highly restricted and secure area and who unexpectedly spun away from Trooper Brewer.

### B. Qualified Immunity

Although the Court does not need to consider the doctrine of qualified immunity that Trooper Brewer has proposed in the alternative to his argument for reasonable use of force, the Court briefly notes its applicability here.

In *Harlow v. Fitzgerald*, the Supreme Court held that the doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." 457 U.S. 800, 818 (1982). The Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The qualified immunity analysis requires inquiry into whether: (1) the facts that a plaintiff has alleged make out a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The Court may exercise its discretion in deciding which of the two prongs it will consider first. *Thomas v. Atty. Gen. of New Jersey*, 692 F. Supp. 2d 444, 450 (D.N.J. 2010) (internal citation omitted).

With respect to the second prong—whether the right at issue was "clearly established" at the time of defendant's alleged misconduct—"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (internal quotation omitted). In other words, the Court must examine the officers' conduct "based upon the information the officer[] had when the conduct occurred," *id.* at 207, and then determine if Fourth Amendment jurisprudence clearly established that the conduct, in light of that information, was unconstitutional. *See id.* at 209.

Trooper Brewer contends that qualified immunity applies because the alleged takedown maneuver was sanctioned by, and not prohibited by, clearly established law. (Def. Br. at 21–22). Plaintiff does not cite to any statute, case law, regulation, or policy that proscribes a takedown maneuver under the circumstances faced by Trooper Brewer, but instead argues that "[Trooper Brewer] is not entitled to qualified immunity as plaintiff was no longer under arrest" at the time of the incident. (Pl. Opp. Br. at 5).

For the reasons set forth in Part IV.A, the Court finds that the law permitted Trooper Brewer to initiate a takedown maneuver under the circumstances—when he confronted a highly-intoxicated, uncooperative and combative individual who had just aggressively broke free from a police escort in a highly restricted area. (*See* Part IV.A, *supra*). Accordingly, Plaintiff cannot show that Trooper Brewer violated a constitutional right and that the right alleged to have been violated was so clearly established that it would have been clear to a reasonable officer that his actions violated the law. Thus, Trooper Brewer is entitled to qualified immunity as a matter of law.

### C.     Trooper Brewer is Entitled to Summary Judgment on the State Claims

For the reasons set forth above, the Court grants summary judgment to Trooper Brewer on the excessive force claim. Because the remaining claims before the Court—negligence and assault and battery—"go hand in hand" with Plaintiff's excessive force claim, Trooper Brewer is entitled to summary judgment on them as well.

Trooper Brewer argues that if the Court finds that Trooper Brewer acted reasonably under the circumstances then Plaintiff's state law claims are "legally untenable" and that they are barred by New Jersey's good faith defense. (Def. Br. at 22–23). Plaintiff in his submission does not address this point. (*See generally* Pl. Opp. Br.).

The Court finds that Plaintiff's state law claims are contingent on his excessive force claim and should be dismissed accordingly. *See Roccisano v. Twp. of Franklin*, 2013 WL 3654101, at \*11 (D.N.J. 2013) (recognizing that a negligence claim requires showing that the officer acted unreasonably in effectuating the seizure); *Hill v. Algor*, 85 F. Supp. 2d 391, 411 (D.N.J. 2000) (recognizing that police officers may use force in effectuating a seizure and only commit an assault and battery when the force used becomes excessive). Thus, Trooper Brewer is entitled to summary judgment on the remaining claims of negligence and assault and battery.

### V. Conclusion

For these reasons, the Court GRANTS Defendants' motion for summary judgment. An accompanying Order follows this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**